UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
:
EQUARN WHITE,                                                    : 13-CV-1427 (ARR)
:
              Petitioner,                        : NOT FOR ELECTRONIC
: OR PRINT PUBLICATION
    -against-                                                 :
: OPINION AND ORDER
STEVEN E. RACETTE, Superintendent,                               :
:
              Respondent.                        :
:
---------------------------------------------------------------- X

ROSS, United States District Judge:

## BACKGROUND

In his petition for a writ of habeas corpus, dated December 4, 2012[1], Equarn White ("petitioner"), appearing pro se, challenges his state criminal conviction pursuant to 28. U.S.C. § 2254. In his petition, he claims that he was deprived of the effective assistance of trial counsel. For the reasons stated below, his petition is denied.

## BACKGROUND

Petitioner challenges his March 19, 2008, conviction in the Supreme Court of the State of New York, Kings County, of Assault in the First Degree. Following two trials that produced hung juries, a third jury trial resulted in petitioner being found guilty of assaulting Darlene Whitfield, who had the left side of her face slashed with a sharp instrument while standing outside her grandmother's apartment. Resp't's Ex. A , Tr. of 2008 Trial 413-18 ("Tr."). As a prior violent felony offender, petitioner was sentenced to a term of fourteen years imprisonment plus five years of post-release supervision. Id., Sentence 10-11.

---

[1] The petition is dated December 4, 2012, on the signature block but the date on which the petition was placed in the prison mailing system is not indicated. The court will treat December 4, 2012, as the date on which the petition was filed. In any event, the respondent has not objected to the timeliness of the petition.

1

The events giving rise to petitioner's conviction occurred on August 8, 2006, when Darlene Whitfield was moving out of her grandmother's home. According to Darlene and her sister, Delrese Whitfield[2], the two of them were standing outside their grandmother's apartment at 1144 Lenox Road, Brooklyn, New York, and waiting for a cab at around 2:15 p.m. on that day when petitioner, who was previously known to them, walked up to Darlene and cut her across the face from her ear to her mouth. Tr. 82-88, 167-72. Petitioner was previously known to the Whitfield sisters as a good friend of their uncle, Daniel Whitfield, who also lived at the apartment at 1144 Lenox Road. Id. 166-67; accord Pet., Dkt. #1, ¶ 1. According to the Whitfield sisters, petitioner spent a significant amount of time at their grandmother's apartment in the months leading up to the incident. Tr. 72-73, 166-67. Earlier in the day on August 8, 2006, Darlene had been at the local police precinct with her sister Delrese to file a complaint against their uncle Daniel related to a physical altercation that occurred on a prior date, and the complaint had resulted in Daniel's arrest. Id. at 76-78, 103-07, 166, 246-47.

Petitioner's theory at trial was that the Whitfield sisters had falsely identified him from the beginning as part of plan to get everyone else out of their grandmother's apartment, id. at 285-87, and he raised an alibi defense. Petitioner's defense relied on the testimony of witnesses Bianca Van Heydoorn and Midgalia Rodriquez, who both worked for the transitional employment program in which petitioner participated at the time of the incident, that petitioner had attended certain job training and placement activities---first in the Crowns Heights section of Brooklyn and then in lower Manhattan---on the morning of August 8, 2006, starting at 8:00 a.m. Id. at 201-09, 227-34. Although the witnesses' testimony did not establish the whereabouts of the petitioner around 2:00 p.m., counsel for petitioner used their testimony to argue that

---

[2] To avoid confusion, the court will refer to the Whitfields individually by their first names and collectively as "the Whitfield sisters."

2

petitioner could not have attended these meetings and been able to return to 1144 Lenox Road in Brooklyn by the time the prosecution's witnesses claimed that he had been there. Id. at 293-98. Another witness for the defense, Shakeeal John, also testified that petitioner was never at the apartment on the day of the attack. Id. at 246.

At petitioner's third trial that resulted in his conviction, Darlene and Delrese testified about the events that occurred outside the apartment at 1144 Lenox Road on August 8, 2006, and identified petitioner as Darlene's attacker. Id. at 82-92, 168-75. In their testimony, they recounted statements that they made shortly after the attack in which they identified petitioner as the attacker, and there were no objections to this testimony. Id. at 98, 117, 175-76. On direct examination, Darlene testified that, at the hospital, she told a police officer that petitioner was the person who cut her. Id. at 98. Delrese testified on direct that, outside the building after the attack, she told a neighbor that it was petitioner who had cut her sister and that, when an ambulance arrived on the scene, she told an ambulance worker that it was "a bastard name Equarn." Id. at 175-76.

At petitioner's third trial, Officer Peter Daly, the police officer who responded to the scene of the attack, also testified on direct, without objection, that when he was dispatched to the scene, he was given the name Equarn White with a description of the suspect. Id. at 30. On redirect, he further recounted meeting with Darlene at the hospital to make a police report of the attack and recalled Darlene's statement that petitioner was her attacker. Id. at 34. Again, there were no objections.

Although there was no objection to Officer Daly's testimony at the third trial, at petitioner's first trial, the prosecution had preemptively requested the court's permission to have Officer Daly testify as to Darlene's prior statement identifying petitioner, and defense counsel

objected. Resp't's Ex. B, Tr. of Def.'s [First] April 2007 Trial 108-18 ("First Trial Tr."). In support of their request, the prosecution argued that inherent in petitioner's alibi defense was the allegation that Darlene and her sister had fabricated the suspect's identity and that Officer Daly's testimony should be admitted to rebut that claim of fabrication. Id. at 116-17. The judge denied the request on the grounds that, at that point in the trial, no allegations of recent fabrication had been raised and that, therefore, the recent fabrication exception to the hearsay rule did not apply to allow Darlene's prior consistent statement. Id. at 116-18. Under New York law, the recent fabrication exception may permit admission of a witness's prior consistent statements only where the defense has charged the witness "with making up a false story well after the event." People v. McClean, 504 N.Y.S.2d 796, 797 (App. Div. 1986) (quoting People v. Singer, 89 N.E.2d 710, 711 (N.Y. 1949) (internal quotation marks omitted)). The judge concluded that, up to that point, the defense had not claimed that the attacker's identity was made up at a later time but rather that the defense claimed that the suspect's identity had been fabricated from the time of the attack, and left open the possibility that such testimony could be used to rebut a recent fabrication claim if raised. First Trial Tr. 116-17. Accordingly, Officer Daly did not testify as to Darlene's prior statement of the suspect's identity at the first trial, and his testimony from that trial was read into evidence at the second trial, as he was unavailable to testify at that time. Aff. in Opp'n to Pet. for Writ of Habeas Corpus, Dkt. #9, ¶ 25 ("Eisner Aff.").

At the end of petitioner's third trial, the prosecutor referred to the witnesses' prior consistent statements at to the attacker's identity in his summation. Tr. 306, 309-10. He specifically referred to Officer Daly's testimony that Darlene identified the petitioner as her attacker in the hospital, id. at 306, and reminded the jury that the Whitfield sisters had been

identifying petitioner as the suspect since the attack, id. at 310. There were no objections to these statements in summation.

On direct appeal to the New York Supreme Court, Appellate Division, petitioner argued that he was denied his due process right to a fair trial in violation of the constitutions of the United States and the State of New York. Resp't's Ex. C, Def.'s Br. to the Appellate Division 15 ("Def.'s Br."). He claimed that he was denied due process when the prosecutor improperly elicited testimony from both of the Whitfield sisters and from Officer Daly that the Whitfield sisters had made statements on the day of the attack identifying petitioner as the assailant. Id. Petitioner argued that these statements (and references made to them in summation) were used to bolster the credibility of the Whitfield sisters' testimony regarding the incident and that "this testimony [as to their statements on that day] violated the longstanding rule in New York that prior consistent statements are not admissible to bolster the creditability of a witness." Id. at 15-16. Petitioner contended that the testimony neither fell under the rule permitting admission of a prior consistent statement to rebut a claim of recent fabrication, id. at 16-18, nor came within any of the other exceptions to the hearsay rule, id. at 18-22. In his brief, petitioner acknowledged that his claims were unpreserved for review because defense counsel had failed to object to the challenged testimony at trial, but asked the Appellate Divison to exercise jurisdiction to review his claims in the interest of justice. Id. at 25.

In the alternative, petitioner also asked the Appellate Division to find that his trial counsel's failure to object to the challenged testimony resulted in a denial of effective assistance of counsel under the federal and state constitutions. Id. at 25-26. He argued that counsel's failure to object to the challenged testimony, particularly after having successfully objected to Officer Daly's testimony in the first trial, was "inexplicable and entirely unjustified." Id. at 26.

The Appellate Division affirmed petitioner's conviction. People v. White, 943 N.Y.S.2d 620, 620 (N.Y. App. Div. 2012). It declined to review petitioner's claims regarding the admission of the prior identification testimony on the grounds that those claims were unpreserved for review. Id. at 621. On petitioner's alternative claim, the Appellate Division held that he had not been denied effective assistance of counsel based on the court's conclusion that "counsel provided meaningful representation insofar as he employed a trial strategy that might well have been pursued by a reasonably competent attorney." Id. (internal quotation marks omitted).

On August 7, 2012, the New York Court of Appeals denied petitioner's application for leave to appeal the decision of the Appellate Division. People v. White, 975 N.E.2d 925 (N.Y. 2012). Petitioner thereafter timely filed the instant federal habeas action alleging denial of his right to effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments as well as that he was denied his due process right to a fair trial..

## DISCUSSION

### I. Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a deferential standard that federal habeas courts must apply when reviewing state court convictions. 28 U.S.C. § 2254(d). The statute provides in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding.

Id. The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts" Supreme Court precedent or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." Id. at 405-06. With respect to the "unreasonable application" clause, "a federal habeas court . . . should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Harrington v. Richter, 131 S. Ct. 770, 784 (2011).

## II. Ineffective Assistance of Counsel

A petitioner seeking a writ of habeas corpus on ineffective assistance of counsel grounds faces a heavy burden in establishing entitlement to relief. Strickland v. Washington, 466 U.S. 668 (1984), established the two-prong test by which ineffective assistance of counsel claims are adjudicated. See Richter, 131 S. Ct. at 780. Under Strickland, a petitioner must demonstrate, first, that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," id. at 688, and, second, that "there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. A court need not decide both prongs of the Strickland test if there is an insufficient showing on one. See id. at 697.

In analyzing a claim that counsel's performance fell short of constitutional standards, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. In so doing, it must "affirmatively entertain the range of possible reasons [petitioner]'s counsel may have had for proceeding as they did." Cullen v. Pinholster, 131 S. Ct. 1388, 1407 (2011) (internal quotation marks omitted).

Moreover, when Strickland claims are presented on collateral habeas review, the court assesses them subject to the strictures of AEDPA and must be "doubly deferential" in reviewing the state court's determination that counsel acted effectively. Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (citing Yarborough v. Gentry, 540 U.S. 1, 5-6 (2003) (per curiam)); see 28 U.S.C. § 2254(d). In order to prevail on an ineffective assistance of counsel claim on habeas review, a petitioner must show not only that counsel's performance fell below the Strickland standard but also that the state court's adjudication of the Strickland standard was itself unreasonable. See Richter, 131 S. Ct. at 785. Stated differently, the court may afford habeas relief only upon a finding that the state court was unreasonable–and not merely incorrect–in concluding that counsel's performance did not fall below an objective standard of reasonableness or, if it did, that petitioner was not prejudiced as a result. See id.

### A. *Failure to object to admission of witnesses' prior consistent statements*

Petitioner argues that his trial counsel's performance fell below constitutional standards because counsel failed to object to introduction of the Whitfield sisters' prior consistent statements or to the prosecutor's use of those statements in his summation. Petition ¶¶ 46-47. Raising the same arguments as those in his brief before the Appellate Division, id. ¶¶ 29-38, he argues that the admission of their prior inconsistent statements improperly bolstered their credibility as witnesses in a manner "especially prejudicial" given the centrality of the witnesses'

credibility to the conviction, id. ¶ 45 (quoting People v. Rosario, 892 N.Y.S.2d 338 (App. Div. 2009)). Petitioner alleges that, having successfully challenged the inclusion of Officer Daly's testimony at the first trial, counsel's failure to object to the admission of the prior consistent statements at the third trial was "inexplicable and entirely unjustified" and "deprived [petitioner] of meaningful representation." Id. ¶ 47 (internal quotation marks omitted).

"[Trial] decisions such as when to object and on what grounds are primarily matters of trial strategy and tactics, and thus are virtually unchallengeable absent exceptional grounds for doing so." United States v. Cohen, 427 F.3d 164, 170 (2d Cir. 2005) (citation and internal quotation marks omitted). In state court, the Appellate Division concluded from its review of the trial record that petitioner's trial counsel "employed a trial strategy that might well have been pursued by a reasonably competent attorney." White, 943 N.Y.S.2d at 621 (internal quotation mark omitted). This court may grant habeas only if it finds that the Appellate Division was unreasonable in that conclusion. Richter, 131 S. Ct. at 785.

Assuming arguendo that petitioner's counsel could have successfully challenged the purportedly inadmissible prior consistent statements, a review of the record demonstrates that counsel's failure to object to that testimony was consistent with counsel's trial strategy to use some of the inconsistencies connected with those statements to attack the Whitfield sisters' credibility. At trial, counsel's strategy was to argue that the Whitfield sisters' had been lying about the identification of Darlene's assailant from the beginning (i.e., from the time of the attack) pursuant to a "plan." Tr. 285-87. Thus, it made little difference to the defense's presentation of its case that the Whitfield sisters had made statements to other people identifying petitioner as the assailant after the attack. It was more important for counsel to challenge the Whitfield sisters' overall credibility and convince the jury that they were lying from the

9

beginning. In fact, the record suggests that defense counsel did not object to Darlene's testimony as to what she told Officer Daly, or to Officer Daly's testimony as to what she told him, because he wanted to elicit the balance of Darlene's statement in which she told Officer Daly that the person she identified as her assailant, the petitioner, lived in Coney Island. Tr. 36-37, 117, 292-93. Defense counsel wanted to use that statement to contradict Darlene's testimony that petitioner stayed at her grandmother's apartment, and thereby challenge her credibility. See id. 36-37, 117. That counsel was not ultimately successful in eliciting the testimony he sought from Officer Daly does not, in hindsight, render counsel's strategy unreasonable. See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) ("In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices." (quoting Strickland, 466 U.S. at 690)). Similarly, trial counsel's failure to object to the prosecutor's use of the prior consistent statements in summation was a matter of trial strategy; he wanted the statement to Officer Daly in evidence so that he could use it to draw out inconsistencies in Darlene's testimony.

Moreover, trial counsel could reasonably have decided that strategically it would be less harmful to petitioner's case to let the testimony of all three witnesses–Darlene, Delrese, and Officer Daly–go without objection rather than run the risk of having the Whitfield sisters' prior consistent statements be the last thing that the jury heard about on rebuttal. Although the judge in petitioner's first trial had not allowed Officer Daly to testify about Darlene's prior statement on direct, there was a reasonable chance that the judge in petitioner's later trial would consider petitioner's alibi defense to entail a claim of recent fabrication that opened the door for prior consistent statements on rebuttal or would find the testimony admissible under another hearsay

exception, such as excited utterance or completing the narrative. By refraining from objection, trial counsel not only avoided highlighting the prior consistent statements but also prevented the prosecution from having the proverbial "last word" on rebuttal and undermining the presentation of petitioner's defense case. Counsel wanted the defendant's alibi witnesses, not witnesses testifying as to prior identifications, to provide the last testimony heard by the jurors. Counsel could reasonably have determined that this advantage outweighed any incremental damage from having the witnesses' identification of the petitioner repeated during the prosecution's case.

In light of these strategic motives, the state court cannot be said to have unreasonably applied Strickland in determining that trial counsel's failure to object to arguably inadmissible hearsay did not amount to ineffective assistance of counsel. See Singleton v. Davis, 308 F. App'x. 560, 562 (2d Cir. 2009) (denying habeas relief where defense counsel elicited hearsay and did not object to its introduction where doing so was strategic though potentially risky).

**B.     *Other allegations raised in petitioner's traverse***

In his traverse, petitioner for the first time appears to raise several additional grounds for his ineffective assistance of counsel claim. Dkt. #10, ¶ 17. Petitioner alleges that his trial counsel fell below constitutional standards because counsel: (1) failed to impeach witnesses with all prior inconsistent statements from petitioner's first two trials, (2) failed to call all defense witnesses from the first two trials, and (3) failed to thoroughly investigate the computer records of witness Midgalia Rodriguez. Id. These claims, which are of a different character than those alleged in the initial petition, were not presented before the state court and are, therefore, unexhausted. See Caballero v. Keane, 42 F.3d 738, 741 (2d Cir. 1994); Rodriguez v. Hoke, 928 F.2d 534, 538 (2d Cir. 1991). Nonetheless, petitioner has shown no good cause for his failure to exhaust these claims, and this court may deny them as without merit. 28 U.S.C. § 2254(b)(2);

see also Rhines v. Weber, 544 U.S. 269, 277 (2005).

Counsel's decisions regarding cross-examination, investigation and witness presentation are afforded a "strong presumption" that they fell within the "wide range" of reasonable professional assistance. Strickland, 466 U.S. at 689. Counsel may "make a reasonable decision that makes particular investigations unnecessary," id. at 691, and "[a]n attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense," Richter, 131 S. Ct. at 789-90. A court reviewing a Strickland claim is "especially deferential to defense attorneys' decisions concerning which witnesses to put before the jury" as such decisions are "typically a question of trial strategy that [reviewing] courts are ill-suited to second guess." Greiner v. Wells, 417 F.3d 305, 323 (2d Cir. 2005) (alteration in original) (internal quotation marks omitted). "[C]ounsel's decision as to whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation." Id. (alteration in original) (internal quotation marks omitted).

A review of the record shows that petitioner's counsel reasonably employed a strategy aimed at attacking the Whitfield sisters' credibility and calling into doubt whether petitioner could have been at the apartment at the time of the incident. At trial, counsel focused on highlighting the most relevant inconsistencies in the Whitfield sisters' testimony and on establishing their motives to fabricate. See Tr. 107-08, 111-17, 124-25, 186-88, 286-87, 292-93. Counsel used the testimony of two seemingly disinterested witnesses, Bianca Van Heydoorn and Midgalia Rodriguez, to construct an alibi for petitioner, id. at 293-98, and petitioner does not explain how any records that might have been obtained from Ms. Rodriguez's computer would more likely have helped than hurt his defense. As such, there is no basis for concluding that counsel's performance fell below "an objective standard of reasonableness" or that there is a

"reasonable probability that, had counsel taken the course of action suggested by petitioner, the result of the proceeding would have been different." Strickland, 466 U.S. at 688, 98. Petitioner's ineffective assistance of counsel claim is therefore denied.

### III.  Denial of Due Process

From the petition, it is not entirely clear whether petitioner also intends to assert his claim, raised in state court, that he was denied his due process right to a fair trial as a result of the prosecutor eliciting prior consistent statements from the witnesses and using those statements in summation as a ground for habeas relief. It is possible to construe some of the allegations made in support of petitioner's ineffective assistance of counsel claim as asserting this additional ground for habeas relief. See Pet. ¶ 45 (stating that admission of the challenged testimony "denied petitioner his due right to a fair trial"); Traverse ¶ 17. However, even if the court construes the petition liberally as raising this ground, the claim is procedurally barred. The Appellate Division held that this claim was unpreserved for review and declined to exercise its interest of justice jurisdiction. White, 943 N.Y.S.2d at 621. Because petitioner has not demonstrated cause for the default, this court may not review the barred claim. Coleman v. Thompson, 501 U.S. 722, 750 (1991).

## CONCLUSION

The petition for a writ of habeas corpus is denied. Because petitioner has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the court declines to issue a certificate of appealability. The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

/S/ Judge Allyne R. Ross
_____
Allyne R. Ross
United States District Judge

Dated:   September 13, 2013
         Brooklyn, New York

**SERVICE LIST**

Equarn White
08-A-2234
Upstate Correctional Facility
309 Bare Hill Road
P.O. Box 2001
Malone, NY 12953